UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| BOBBY DOE | CIVIL ACTION NO. 05-2060 |
| VS. | SECTION P |
| IMMIGRATION AND CUSTOMS ENFORCEMENT, ET AL. | JUDGE JAMES |
| | MAGISTRATE JUDGE HAYES |

REPORT AND RECOMMENDATION

Before the court is a civil rights complaint filed *in forma pauperis* on November 28, 2005, by *pro se* plaintiff Bobby Doe. Plaintiff is an immigration detainee in the custody of the Department of Homeland Security/Bureau of Immigration and Customs Enforcement (ICE). He is presently being detained at the Tensas Parish Detention Center (TPDC) in Waterproof, Louisiana, and complains of an incident that occurred at that facility in May 2005 when he was beaten by his fellow detainees.

In his original complaint, plaintiff named ICE, Emerald Correctional Service (the corporate owner/operator of TPDC), TPDC Warden Dale Dauzat, and ICE District Director John Mata as defendants. On March 7, 2006, the undersigned authored a Report recommending dismissal of plaintiff's complaint.[1] Plaintiff filed a timely objection to the Report and

---

[1] The Report and Recommendation noted, "The standard to be applied in analyzing failure to protect cases arising under the Fourteenth Amendment's due process clause is that of 'deliberate indifference.' *Hare v. City of Corinth*, 74 F.3d 633, 638 (5th Cir.1996) (*en banc*), rev'd on other grounds, 135 F.3d 320 (5th Cir.1998). Thus, plaintiff's right to protection from violence is measured by the standard of subjective deliberate indifference enunciated by the Supreme Court in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under that standard, a prison official is not liable for failing to protect an inmate or detainee unless the official 'knows of and disregards an excessive risk to inmate health or safety.' *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In order to prevail plaintiff must establish that the defendant officials: (1) were

1

Recommendation. [doc. 7] On May 10, 2006, Judge James issued a Memorandum Ruling and Judgment. The claims against ICE, ICE Field Director John Mata, TPDC's corporate owner, Emerald Correctional Service, and TPDC's Warden Dale Dauzat were dismissed with prejudice; however, since plaintiff "...alleged sufficient facts against the individual corrections officers to survive a frivolity review...," he was allowed a period of thirty days to amend his complaint to name the individual officers he claimed were responsible for the harm which befell him. [docs. 8 and 9]

On June 2, 2006, and again on June 13, 2006, plaintiff amended his complaint. [docs. 10 and 11]

## STATEMENT OF THE CASE

The amended complaints and associated exhibits allege the following relevant facts:

On May 20, 2005, plaintiff was housed in TPDC Unit "C." While watching television, he overheard the "Dorm Rep" who commented that "... something in the dorm was missing and they (Dorm Rep. and his unauthorized shakedown detainees) were conducting a shakedown ..." Plaintiff advised his fellow detainees to stay away from his property. When he later returned to his bed he noticed that his belongings had been ransacked. He approached the Dorm Rep to address the issue and was threatened by the "Gang of unauthorized shakedown detainees" who "...violently approached the area and threatened that Plaintiff rather be careful or else..." [doc. 10,

---

aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and, (2) actually drew the inference. *Farmer*, 511 U.S. at 837. Negligent inaction can never be the basis of a failure to protect claim. *Farmer*, 511 U.S. at 835; *Hare*, 74 F.3d at 642. The legal conclusion of deliberate indifference must rest on facts clearly evincing 'wanton' actions on the part of defendants. *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985)" The undersigned then concluded, "Nothing in plaintiff's complaint suggests that the defendants were guilty of deliberate indifference. Nothing suggests that the defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed. Even assuming that the defendants were aware of such facts, nothing suggests that they actually drew such an inference." [doc. 6]

2

pp. 2-3; pp. 5-6]

Sergeant Juliann Robinson and Corporal Anthony Hawkins immediately intervened and removed plaintiff from the dormitory. After approximately 45 minutes, plaintiff was returned to the dormitory despite his initial "... refusal to go back because he felt he was in danger." [doc. 10, p. 3; p. 6]

When plaintiff re-entered the dormitory, he was attacked by a gang of detainees armed with "locks in a sock" and razor blades as well as fists and legs. Plaintiff sustained injuries to his head and arms and was rushed to the Riverland Hospital Emergency Room where he was treated for his injuries. (He claims to have sustained nerve damage in his head that now affects his vision. He claims that he lost a pint of blood and now has visible scars.) [*id.*]

On May 24, 2005, plaintiff was brought before the prison disciplinary board where he was charged with fighting. He pled guilty to the offense; however, he claims that the plea was coerced. [*id.*] Plaintiff now claims that the disciplinary proceedings were instituted in violation of the institution's disciplinary handbook which mandates that detainees are to be served with an incident report within 24 hours of the alleged infraction. [doc. 10, p. 8] The handbook also prohibits the investigating officer from presiding over the disciplinary hearing without the consent of the accused. According to plaintiff, Captain Bryan Brown and Lieutenant Miller held an internal disciplinary hearing "in which they insisted that plaintiff should plead guilty." When plaintiff refused, Captain Brown "...claimed that the incidence is considered a fighting incident..." Plaintiff further claimed, "... the Law Clerk, Olgundi Johnson in the absence of the plaintiff had a sidebar conference where he was advised by Capt. Brown to be silent during the proceeding. Plaintiff requested to call in witnesses Capt. Brown said that the incident report

would not be part of plaintiff's disciplinary record. There was not a shred of fact or evidence that suggested plaintiff was involved in a fight...." [*id.*]

Plaintiff claimed that Robinson and Hawkins conspired with the warden, deputy warden, and chief of security, and fabricated the incident report despite their investigation which proved that plaintiff was the victim of an assault. [*id.*]

Plaintiff claimed that he has received "minimal medical care despite continuous medical need." He claimed that he suffers from "nightmare, fear of sleeping in the dorm, memory loss, nerve damage, fear of darkness, excruciating mental and physical pain, agony and embarrassment, constant sensational movement in head, increased emotional outbreak, lack of trust of law enforcement officers and loss of prolonged concentration while reading." [doc. 11, pp. 10-11]

In addition to the amended complaints, plaintiff has supplied the statements of his fellow detainees, Nelson Irabor and Erin Brown. According to Irabor, on May 20, 2005, two unnamed detainees were looking for a laundry bag. They began to search plaintiff's belongings. When plaintiff saw them he asked them to stay away from his locker. Four or five other detainees threatened plaintiff. Sgt. Robinson and other officers "rushed into the dorm" and "left with [plaintiff.]" One of the detainees remarked that plaintiff would be hurt if he were to be returned to the dorm. Approximately 45 minutes later plaintiff returned to the dormitory. He sat down to speak to Mr. Irabor and 6 unnamed detainees rushed him. One detainee hit plaintiff in the head with a sock containing a lock; another detainee punched him; and a third cut him with a razor blade. The officers returned in the "blink of an eye." [doc. 10, p. 13]

According to Mr. Brown, he was in the barbershop between the hours of 7 p.m. and 9

4

p.m. on the evening of May 20, 2005. He became aware of a commotion in the nearby corridor. He looked out and observed plaintiff exiting the dormitory with Sgt. Robinson and Corporal Hawkins. Plaintiff entered the barber shop and began to explain that some other detainees ransacked his belongings. While he was confronting them, others attempted to attack him and Robinson and Hawkins were called into the dormitory. Some time later, Ray Davis called plaintiff to return to the dormitory. As plaintiff exited the shop, Brown overheard him tell Officer Davis that he was afraid to return to the dormitory. Davis told plaintiff that if he returned without saying a word, there would be no problem. [doc. 10, p. 14]

As noted above, in his Ruling of May 10, 2006, Judge James noted, "... that one alleged fact was not made known to Magistrate Judge Hayes or to the Court until the Objection: that Doe was allegedly forced to return to the dorm over his objection that he was in danger..." Therefore, plaintiff was allowed to amend his complaint to identify the officers he claims are responsible for his injuries. [doc. 8]

Plaintiff identified the following defendants in his Amended Complaints: (1) The Tensas Parish Detention Center; (2) Warden Dale Dauzat; (3) Deputy Warden Jody McJimsey; (4) Chief Security Officer Fred Schoonover; (5) Security Captain Bryan Brown; (6) Lieutenant Juliann Robinson; (7) Corporal Anthony Hawkins; (8) Officer Ray Davis; (9) Delores Miller; and, (10) Dr. Sarah Lee. [docs. 10 and 11]

### LAW AND ANALYSIS

1. Appointment of Counsel

On June 13, 2006, plaintiff filed a Motion to Reconsider Appointment of Counsel. [doc. 12] For the reasons set forth in the original Report and Recommendation [doc. 6] it is

recommended that plaintiff's Motion to Reconsider Appointment of Counsel be **DENIED.**

2. Initial Review

Plaintiff has been granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. Under 28 U.S.C. § 1915(e)(2)(B), a district court is directed to dismiss an action if the court determines that the action is frivolous or malicious or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i) and (ii); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998); see also 28 U.S.C.A. § 1915A.

A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v. Wyatt*, 157 F.3d 1016, 1019 (5th Cir.1998) citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory. *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir.1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir.1998). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Independent School District*, 153 F.3d 211, 215 (5th Cir.1998).

When determining whether a complaint is frivolous or states a claim upon which relief may be granted, the court must accept plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir.1996) (frivolity); *Bradley*, 157 F.3d at 1025 (failure to state a claim).

Plaintiff has submitted an articulate *pro se* complaint, to which he attached additional documents, including medical records and prison grievances. He likewise filed an articulate objection to the undersigned's original Report and Recommendation. Finally, he has submitted

6

an amended complaint supported by written statements from eye witnesses, all of which detail his theory of liability. Thus, it is clear that plaintiff has articulated all of the facts available in support of his claim. In short, it appears that plaintiff has pleaded his best case. Therefore, further amendment of the complaints is unnecessary.

Accepting all of plaintiff's allegations as true, and giving plaintiff the benefit of every doubt, the undersigned concludes, for the reasons stated hereinafter, that plaintiff's claims are frivolous and that he has failed to state claims upon which relief may be granted.

### 3. Deliberate Indifference

Plaintiff faults the defendants for their failure to protect him from his fellow detainees on May 20, 2005. As noted, plaintiff is an immigration detainee, not a prisoner or a convict.[2] Therefore, his failure to protect claims arise under the due process clause of the Fourteenth Amendment and not the Eighth Amendment's cruel and unusual punishment clause.[3] The standard to be applied in analyzing failure to protect cases arising under the Fourteenth Amendment's due process clause is that of "deliberate indifference." *Hare v. City of Corinth*, 74 F.3d 633, 638 (5th Cir.1996) (*en banc*), rev'd on other grounds, 135 F.3d 320 (5th Cir.1998).

Thus, plaintiff's right to protection from violence is measured by the standard of subjective deliberate indifference enunciated by the Supreme Court in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under that standard, a prison official is not

---

[2] See *Ojo v. INS*, 106 F.3d 680 (5th Cir.1997) (stating that a detained alien is not a prisoner within the meaning of criminal law); *INS v. Lopez-Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (stating that deportation proceeding is a purely civil action to determine an alien's eligibility to remain in the United States).

[3] The Eighth Amendment's prohibition against cruel and unusual punishment protects the rights of convicted prisoners; detainees, on the other hand, must look to the Fourteenth Amendment for their constitutional protections. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).

7

liable for failing to protect an inmate or detainee unless the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In order to prevail plaintiff must establish that the defendant officials: (1) were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and, (2) actually drew the inference. *Farmer*, 511 U.S. at 837. Negligent inaction can never be the basis of a failure to protect claim. *Farmer*, 511 U.S. at 835; *Hare*, 74 F.3d at 642. The legal conclusion of deliberate indifference must rest on facts clearly evincing "wanton" actions on the part of defendants. *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985). In *Smith v. Wade*, 461 U.S. 30, 39 n. 8, 103 S.C. 1625, 1632 n. 8, 75 L.Ed.2d 632 (1983), the Court approved the following definition of wanton – "'Wanton means reckless – without regard to the rights of others ... Wantonly means causelessly, without restraint, and in reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure.' 30 American and English Encyclopedia of Law 2-4 (2d ed. 905) (footnotes omitted)."

 Nothing in plaintiff's complaint suggests that defendants TPDC, Warden Dauzat, Deputy Warden McJimsey, Security Officer Schoonover, Delores Miller or Dr. Sarah Lee were guilty of deliberate indifference. Nothing suggests that these defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed. Even assuming that these defendants were aware of such facts, nothing suggests that they actually drew such an

8

inference. In short, plaintiff has failed to state a claim of deliberate indifference as to these defendants.[4]

In his objection to the original Report and Recommendation, plaintiff implied that Lt. Robinson and Cpl. Hawkins were responsible for returning him to the dormitory despite his protestations. However, in his amended complaint he alleged only that Robinson and Officer Ray Davis were culpable. [See doc. 10, p. 7, "Officer Ray Davis and Sgt. Robinson, operating under the order of their Supervisors, ordered plaintiff to return to the identical dormitory despite plaintiff's refusal. Officer Ray Davis stated verbatim, 'go back and nothing will happen.'"]

Obviously, plaintiff states no claim with respect to Cpl. Hawkins.

The only evidence submitted which even vaguely suggests culpability is found in the statement of detainee Brown. According to Brown it was <u>Officer Ray Davis</u> who ordered plaintiff to return to Dorm C. Further, according to Brown, Davis appeared to be of the opinion that if Brown re-entered Dorm C without saying a word, he would not be in danger. [doc. 10, p. 14]

Again, plaintiff has provided insufficient facts to warrant the conclusion that Robinson and Davis were deliberately indifferent to his welfare and safety. First, there are no allegations which suggest that Robinson and Davis were aware of facts from which the inference could be

---

[4] As noted above, the District Court adopted the original Report and Recommendation insofar as it concluded "...that [Plaintiff] has not made any allegations against the current Defendants [ICE, Mata, Emerald Correctional Service, Warden Dauzat] in this case of deliberate indifference..." [doc. 8, pp. 2-3] Plaintiff has now reasserted claims against Warden Dauzat and added additional supervisory defendants, including TPDC, Dy. Warden McJimsey, Chief of Security Schoonover and Captain Brown; however, his pleadings still make no valid claim with respect to these defendants. Instead, he suggests that the "lack of training," "the institution policy," and the fact that the corrections officers were "...operating under the order of their Supervisors..." [doc. 10, p. 7] resulted in the harm he complains about. These conclusory allegations are insufficient to warrant the imposition of liability with regard to these defendants.

9

drawn that a substantial risk of serious harm existed. Further, there are no allegations whatsoever to suggest that Robinson and Davis actually drew such an inference and that they thus wantonly desired the harm which resulted.

Finally, and most importantly, the documentary evidence submitted by plaintiff with his original complaint provides a completely different scenario than the one subsequently proposed in plaintiff's Objection and Amended Complaints. According to the grievances submitted by the plaintiff to the officials at TPDC, plaintiff described the events of May 20, 2005, as follows:

> I had a verbal confrontation with Andrew regarding my property being disrespected. In the middle of the verbal confrontation, some of his unauthorized shakedown members approached me saying I rather be careful. Abruptly, Sgt. Robinson and Cpl. Hawkins came in the dorm and advised that I should depart the dorm for a while. Approximately 30-45 minutes later I came back in the dorm. Detainees Rudy instantaneously struck my head with a sock containing 2-3 locks... [doc. 1-7, pp. 5-7]

Plaintiff made no claim that he was ordered back into the dormitory against his will.

In another grievance dated May 24, 2005, plaintiff described the assault but again made no mention of having been ordered to return to Dorm C against his will. [doc. 1-7, p. 12]

In another unsigned, undated written statement it was claimed,

> On May 20, 2005, Mr. Bobby Doe was watching T.V. when bunk 80 and 62 started making noise that they were looking for a laundry bag. They both went straight to Mr. Doe's locker going through it as if the bag will be there. When Mr. Doe saw them, he asked them to stay away from his locker. There came a swamp [sic] of other guys wanting to jump on Mr. Doe for asking them to stay away from his locker, which included bunk 78 who they called Taliban, bunk 53 he better not come back to this dorm. He said. About 45 minutes later Mr. Doe walked back in the dorm. Mr. Nelson Irabor called him to sit down for talk, but to our surprise, immediately he sat down on bunk and the officers closed the door to the dorm.

10

> Bunk 53, 78, 62, 12, 82 and 40 rushed him like a swamp of bees
> with their hands in their pockets... It was the blink of an eye, the
> officers were back in the dorm again. [doc. 1-8, p. 5]

Again, plaintiff did not assert the claim that he was ordered back to the dormitory against his wishes.

Further, in his letter addressed to Tensas Parish Sheriff Ricky Jones dated October 19, 2005, plaintiff made no mention of being forced to return to Dorm C following the initial incident. [doc. 1-8, p. 12] Likewise, in his letter to the Inspector General of Homeland Security, dated October 11, 2005, plaintiff did not allege that he was forced to return to the dorm over his objections. [doc. 1-8, p. 14]

In short, nothing of record suggests that Sgt. Robinson and Officer Davis, or any of the defendants identified in the Amended Complaints were deliberately indifferent to plaintiff's welfare and safety. Since plaintiff has failed to show deliberate indifference, all of his claims against these defendants should be dismissed with prejudice.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

**IT IS FURTHER RECOMMENDED** that plaintiff's Motion to Reconsider Appointment of Counsel [Doc. 12] be **DENIED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond

to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 21st day of June, 2006.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE